IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:07-CV-136-FL

| | |
|---|---|
| ROBIN M. EVANS and EAST COAST SOLUTIONS, INC., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UDR, INC. f/k/a United Dominion Realty Trust, Inc), et al., )<br>)<br>Defendants. ) | **MEMORANDUM AND RECOMMENDATION** |

This case comes before the court on the motion for summary judgment by defendants UDR, Inc., UDR of NC, Property Manager Rebecca Lynn, and District Manager Rachelle Jacobs (collectively "defendants") (D.E. 30) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs oppose the motion. In addition to memoranda (D.E. 30-2, 34, 41), both sides have filed affidavits and other evidentiary materials (D.E. 30-3 to 30-14, 34-2 to 34-7, and 35-37). The motion was referred to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that defendants' motion be allowed.

## BACKGROUND

Plaintiffs East Coast Solutions, Inc. ("ECS") and Robin Evans ("Evans") commenced this action pursuant to the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, et seq. ECS is a non-profit organization which provides substance abuse treatment, housing, and supportive services for recovering alcoholics and drug addicts. (Compl. (D.E. 1) ¶8). A program ECS operates, called the South East Area Residential Initiative Self-Sufficiency Endeavor or SEARISE, is a highly

structured, intensive, one-year program for women with young children. (*Id.* ¶¶ 9, 18; Albers Aff. (D.E. 35) ¶3). Evans is a young mother who is recovering from substance abuse and addiction, and wishes to participate in ECS's SEARISE program. (Compl. ¶¶ 7, 9).

At all times relevant to the issues before the court, defendants UDR, Inc. and UDR of North Carolina (collectively "UDR") jointly owned, operated, and/or managed apartment complexes throughout North Carolina, including Forest Hills Apartment Homes ("Forest Hills") in Wilmington, North Carolina. (*Id.* ¶¶ 10, 11; Ivey Aff. (D.E. 30-13) ¶ 3).[1] Defendant Rebecca Lynn ("Lynn") was employed by UDR as the Property Manager of Forest Hills and defendant Rachelle Jacobs ("Jacobs") was UDR's District Manager in Wilmington. (Compl. ¶¶ 12, 13). ECS has rented a number of apartments at Forest Hills in order to operate the SEARISE program there. (*Id.* ¶ 19; Albers Aff. ¶ 8).

In January of 2006, Evans gave birth to a son who was removed from her custody by the local department of social services. (Compl. ¶ 16). One condition for Evans to regain custody of her son was her participation in and completion of the SEARISE program. (*Id.* ¶ 17). ECS accepted Evans into the SEARISE program on or about 16 April 2007 and, as part of her application process, Evans completed a rental application to occupy one of ECS's rental units at Forest Hills. (*Id.* ¶ 29; Albers Aff. ¶ 7). Evans completed truthfully the section of the rental application which inquired about her criminal history.[2] Her criminal history includes a 2002 arrest and conviction, based on a plea of

---

[1] UDR, Inc. apparently sold the Forest Hills property in March of 2008. (Ivey Aff. (D.E. 30-13) ¶ 3). The parties have stipulated (*see* D.E. 26) that the sale of the property mooted certain elements of the relief plaintiffs seek (*e.g.*, require an accommodation in UDR's criminal history policy in order to allow Evans to live in Forest Hills), but the remaining elements continue to be at issue (*e.g.*, declaratory relief, damages). The ownership change therefore does not moot this action in its entirety.

[2] In their motion and supporting memorandum, defendants argued that Evans failed to disclose her criminal history on her rental application. Specifically, defendants contended that in the rental application Evans was asked about

2

guilty, for misdemeanor simple assault related to domestic violence, for which prayer for judgment was continued.[3] (Compl. ¶ 30; Report on Evans' Crim. Hist. (D.E. #30-9), p. 3).[4]

UDR had a policy relating to adult applicants and prospective occupants with a criminal history. The policy reads:

---

being charged with a misdemeanor and responded in the negative. (*See, e.g.*, Defs.' Mem. (D.E. 30-2), p. 3). In their response memorandum, plaintiffs denied that the rental application Evans completed inquired about misdemeanors, citing to the copy of her rental application which defendants themselves submitted as an exhibit to their supporting memorandum (D.E. 30-4). (Pls.' Mem. (D.E. 34), pp. 3-4). In fact, no such inquiry appears in the application. In their reply memorandum, defendants concede that their arguments concerning Evans' failure to disclosure were in error and that defendants inadvertently quoted from a different version of UDR's rental application than the one filled out by Evans. (Defs.' Reply (D.E. 41), pp. 1-2). Defendants also expressly admit that Evans accurately responded to the criminal history questions in her rental application. (*Id.*, p. 2). Accordingly, the court will disregard those portions of defendants' submissions contending that Evans did not adequately disclose her criminal record and that such non-disclosure serves as an independent basis for their refusal to permit her to reside at Forest Hills. While the court appreciates defendants' acknowledgment of and apology to Evans and the court for their error with regard to the application form, the court does find it troubling that defendants did not use greater care in reviewing the form—which, again, they included with their submissions on their motion—before alleging dishonesty by Evans.

[3] Under North Carolina law, "prayer for judgment continued" is one of several ways in which a court may direct that judgment be handled following a conviction by verdict or guilty plea. *See Florence v. Hiatt*, 101 N.C. App. 539, 541, 400 S.E.2d 118, 120 (1991) (citing *State v. Griffin*, 246 N.C. 680, 682-83, 100 S.E.2d 49, 50-51 (1957)). The term refers specifically to deferral of court action on the state's request for entry of judgment, the final order in a case which would include the sentence being imposed on the defendant. *See Griffin*, 246 N.C. at 682-83, 100 S.E.2d at 51; *see also* N.C. Gen. Stat. § 15A-101("Prayer for judgment continued upon payment of costs, without more, does not constitute entry of judgment."). A conviction based on a plea of guilty may generally be treated as a conviction even if the prayer for judgment is continued. "'It is settled law in this State that a plea of guilty, freely, understandingly, and voluntarily entered, is equivalent to a conviction of the offense charged.'" *State v. Sidberry*, 337 N.C. 779, 782, 448 S.E.2d 798, 800 (1994) (held that trial court properly treated as convictions for purposes of cross-examination of defendant under Evidence Rule 609 crimes to which he had pled guilty but for which prayer for judgment was continued); *accord Friend v. State*, 169 N.C. App. 99, 103, 609 S.E.2d 473, 475 (2005) (held that trial court improperly failed to treat as convictions for purposes of a statute barring gun purchases by felons crimes to which defendant had pled guilty but for which prayer for judgment was continued) (citing above-quoted language from *Sidberry*; *see also Britt v. North Carolina Sheriffs' Educ. & Training Stds. Comm'n*, 348 N.C. 573, 576-77, 501 S.E.2d 75, 77 (1998) (held that trial court improperly failed to treat as convictions for purposes of a deputy sheriff's certification crimes to which he had pled guilty but for which prayer for judgment was continued); N.C. Gen. Stat. § 15A-1331(b) ("For the purpose of imposing sentence, a person has been convicted when he has been adjudged guilty or has entered a plea of guilty or no contest."). In this motion, plaintiffs acknowledge the simple misdemeanor assault to be a conviction. (*E.g.*, Pls.' Mem., pp. 2 ("Plaintiff Evans has one criminal conviction— a 2002 misdemeanor simple assault for which she received a Prayer for Judgment Continued."), 6 n.1("Plaintiffs have focused on the one conviction . . . .").

[4] The guilty plea is indicated in the report on Evans' criminal history that is in the record by the code "GL" following the term "**Plead:**". The court takes judicial notice that the public record of Evans' criminal history also shows that she pled guilty. *See* Fed. R. Evid. 201.

3

CRIMINAL HISTORY. All applicants and prospective occupants over the age of 18 must submit an application for a criminal history check and verify their criminal history at Management's request. *The application or occupancy of any person may be denied at any time based on their criminal history, in Management's sole and absolute discretion. Criminal history for which Management may deny applications or occupancy* (on a case by case basis as determined by senior management) *include*, but are not limited to, *arrests for any crimes involving actual or potential physical harm to a person(s)* or property, sex or public morals related crimes, crimes involving possession, manufacture, or delivery of any controlled substance, marijuana, drug paraphernalia, or weapons, or fraud or financial crimes (Misdemeanor theft by check may be acceptable if all security deposit(s) and rent payments are paid by money order or cashier's check). *Management WILL deny applications or occupancy for all persons arrested for the crimes referenced above whose final disposition includes a conviction*, probation, *deferred adjudication*, court ordered supervision, or pretrial diversion.

(Crim. Hist. Policy (D.E. 30-3) (emphasis added)).

The policy thus gives management the discretion to deny applications and occupancy to an adult with any criminal history, including specifically "arrests for any crimes involving actual or potential physical harm." (*Id.*). However, management will deny on a non-discretionary basis applications and occupancy for certain crimes "whose final disposition includes a conviction . . . [or] deferred adjudication," again including crimes involving actual or potential physical harm. (*Id.*). The misdemeanor simple assault by Evans was obviously a crime which involves "actual or potential physical harm"[5] and its final disposition was both a conviction, based on Evans' plea of guilty, and a deferred adjudication, based on the prayer for judgment continued. Therefore, under UDR's policy, Evans' application was subject to non-discretionary denial by management.[6]

---

[5] *See* Incident/Investigation Report (D.E. 37).

[6] Plaintiffs concede that Evans' criminal record includes arrests and related proceedings besides those concerning the assault—namely, a misdemeanor larceny charge that was dismissed in Superior Court (after a guilty plea in District Court) and a misdemeanor harassing telephone charge that was dismissed in District Court. (*See* Pls.' Mem., p. 6 n.1; Report on Evans' Crim. Hist., pp. 1-2, 4). However, these other matters appear to fall within the discretionary waiver provision. Evans' application could therefore be approved under UDR's policy, without modification, with respect to these other matters. It is only the assault which is subject to the non-discretionary denial provision and which

4

Upon receipt of Evan's application, UDR provided Evans' identity to a third-party vendor to conduct a criminal history check. (Compl. ¶ 29). The third-party vendor recommended denying Evans' application on the basis of her criminal record. (Lynn Aff. (D.E. 30-14) ¶ 4;[7] Report Recommending Denial (D.E. 30-6, p. 1)). UDR subsequently denied Evans' rental application on that basis. (Compl. ¶ 32; Letter Denying Evans' Appl'n (D.E. 30-6, p. 2)).

On 25 May 2007, ECS wrote to Lynn to advise that Evans was a person with a mental disability and a recovering substance abuser, and that her former conviction was directly related to and resulted from her mental disability and substance abuse[8] (referred to collectively as "Evans' disability" or "her disability"). (Compl. ¶ 33; ECS 25 May 2007 Letter (D.E. 30-7)). ECS requested that Evans be granted a reasonable accommodation to UDR's criminal history policy by allowing Evans to occupy one of the apartment units at Forest Hills. (Compl. ¶ 33; ECS 25 May 2007 Letter). Lynn advised ECS that the matter was being referred to Jacobs for review. (Compl. ¶ 34). Thereafter, on 17 July 2007, ECS was advised that UDR would only consider a discretionary override of its criminal history policy for Evans if the misdemeanor had been dismissed by the court, and there were documents proving such dismissal. (*Id.* ¶ 35).

---

represents an absolute bar to Evans' application under the policy. It is therefore only with respect to the assault that plaintiffs are seeking modification of UDR's policy as an accommodation to Evans' disability. (*See* Pls.' Mem., p. 6 n.1). The court's analysis of Evans' criminal history does not, of course, include any arrests and related proceedings against her which may have occurred after the time period addressed in the complaint. Any such arrests and proceedings would not moot this action for reasons comparable to those discussed in footnote 1 above.

[7] The Lynn affidavit is not notarized and therefore the court is not treating it as sworn testimony. Nonetheless, the statements of fact set forth in it, which relate to the chronology of denial of Evans' application, do not appear to be in dispute.

[8] The parties do not dispute that individuals who are recovering substance abusers are entitled to disability protections provided by the FHAA. *See, e.g., United States v. S. Mgmt. Corp.*, 955 F.2d 914, 917-23 (4th Cir.1992).

5

On 20 July 2007, ECS and Evans again requested that UDR conduct an individualized assessment of Evans' circumstances in order to flexibly apply its policy and grant a reasonable accommodation pursuant to the Fair Housing Act. (Compl. ¶ 37; ECS 20 July 2007 Letter (D.E. 30-8)). On 6 August 2007, UDR advised that it was unwilling to make an exception to its criminal history policy. (Compl. ¶ 38; UDR 6 August 2007 Letter (D.E. 30-10)).

Plaintiffs later commenced this lawsuit. In their complaint, plaintiffs seek declaratory and injunctive relief, as well as damages, attorneys fees, and costs. (Compl., pp. 14-15). Defendants deny any wrongdoing. (Answer (D.E. 19)).

Although in the litigation to date defendants have also disputed that Evans has a disability and that the assault conviction was related to such a disability, they concede these facts for purposes of their summary judgment motion. (Compl. ¶¶ 7, 31; Ans. ¶¶ 7, 31; Defs.' Mem. (D.E. 30-2), p. 8 n.3). The court will accordingly deem these facts to be established for purposes of the motion.

## DISCUSSION

### I. STANDARD OF REVIEW

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For the reasons discussed below, the court believes that there are no material facts in dispute and that this case is appropriate for disposition by summary judgment.

## II. OVERVIEW OF FAIR HOUSING ACT

The FHAA was enacted to provide "fair housing throughout the United States," 42 U.S.C. § 3601, and prohibits discrimination in housing against people with disabilities, *id.* § 3604(f)(1). Prohibited discrimination under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person [with a disability] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995).[9] In other words, under the FHAA, accommodations must be made if three requirements are met: (1) they are necessary to afford people

---

[9] A plaintiff can prove discrimination under section 3604(f) by showing (1) intentional discrimination, (2) disparate impact, or (3) failure to provide reasonable accommodations. *Oxford House, Inc. v. City of Virginia Beach, Va.*, 825 F. Supp. 1251, 1258 (E.D.Va. 1993). As noted, it is the latter category that is at issue in the present case.

with disabilities (2) an equal opportunity to housing and (3) are reasonable for the housing provider to make. *Bryant Woods Inn, Inc. v. Howard Cty.*, 124 F.3d 597, 603 (4th Cir. 1997).[10] Whether a requested accommodation is required by law is 'highly fact-specific, requiring case-by-case determination.'" *Groner v. Golden Gate Gardens Apts.*, 250 F.3d 1039, 1044 (6th Cir. 2001) (quoting *U.S. v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994)). Because the concept of "reasonable accommodation" was developed in cases under the Rehabilitation Act, the Fourth Circuit has instructed that it is appropriate to look to Rehabilitation Act cases for guidance in interpreting the FHAA. *Bryant Woods*, 124 F.3d at 603; *see also Wells v. State Manufactured Homes, Inc.*, No. 04-169-P-S, 2005 WL 758463, at *4 (D. Me. 11 March 2005) ("Claims alleging failure to accommodate under the ADA and the Fair Housing Act are also analyzed according to the same standards."), *aff'd*, 2005 WL 850851 (D. Me. 12 Apr 2005).

In order for an accommodation to be deemed "necessary," there must be some causal connection between the proposed accommodation and the equal opportunity to be afforded the person with a disability. *Bryant Woods*, 124 F.3d at 604. The requisite nexus exists "when the requested accommodation provides a 'direct amelioration of a disability's effect.'" *Bell v. Tower Mgmt. Serv., L.P.*, No. 07-CV-5305(FLW), 2008 WL 2783343, at *7 (D.N.J. 15 July 2008).

Similarly, the "equal opportunity" element directly relates to whether the accommodation is necessary and requires equal treatment between those with a disability and those without. Though in some cases the requested accommodation may provide an increased benefit to people with disabilities above those that would be provided to individuals who are not disabled, the FHAA does

---

[10] A plaintiff bears the burden of proving all three elements by a preponderance of the evidence. *Bryant Woods Inn*, 124 F.3d at 604.

8

not necessarily require this result in every case. *Bryant Woods*, 124 F.3d at 605; *Oxford House, Inc. v. City of Raleigh*, 5:98-CV-113-BO, 1999 WL 1940013, at *4 (E.D.N.C. 26 Jan. 1999) ("As the Fourth Circuit has stated, federal fair housing laws require equal opportunities in housing, not a superior advantage."). Instead, the statute requires accommodations necessary to ameliorate the effect of a plaintiff's disability so that he or she may compete equally with non-disabled individuals in the housing market. *Geter v. Horning Bros. Mgmt.*, 537 F. Supp. 2d 206, 209 (D.D.C. 2008).

In determining whether an accommodation is "reasonable," the court must balance the burdens imposed on the defendant against the benefits to the plaintiff. *Hubbard v. Samson Mgmt. Co.*, 994 F. Supp. 187, 190 (S.D.N.Y. 1998). "Reasonable accommodations do not require accommodations which impose undue financial and administrative burdens or changes, adjustments or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program." *Bryant Woods*, 124 F.3d at 604 (internal citations omitted). A reasonable accommodation may, however, involve modifying a general rule or policy in order to make it less burdensome on an individual with a disability. *Hubbard*, 994 F. Supp at 190; *see also Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 412-13 (1979) (accommodations are not reasonable if they require a fundamental alteration in the nature of a program, or would impose "undue or administrative burdens" on defendant); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1502 (10th Cir. 1995) ("A reasonable accommodation involves changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual.") (internal citations omitted). With these principles in mind, the court will now turn to the merits of defendants' motion.

9

## III. WHETHER MODIFICATION OF UDR'S CRIMINAL HISTORY POLICY IS NECESSARY TO ACCOMMODATE EVANS' DISABILITY

By their motion, defendants contend that, as a matter of law, the FHAA did not require them to modify their criminal history policy with respect to Evans' assault conviction in order to accommodate her disability. The initial ground upon which they rely is that modification of their policy was not an accommodation that was "necessary" under the FHAA.[11] They argue specifically that an insufficient nexus existed between the requested accommodation and Evans' disability to render the accommodation necessary. Neither defendants nor plaintiffs have identified any case law directly on point, and the court has not located any such cases either. Based on an extensive review of the case law that does exist and the principles established in those cases, the court finds itself in agreement with defendants' position.

At the outset, the court notes that the FHAA clearly does not prohibit landlords from denying a person occupancy on the basis of his criminal record. *See, e.g., Talley v. Lane*, 13 F.3d 1031, 1034 (7th Cir. 1994). In *Talley*, the Seventh Circuit affirmed the dismissal of a complaint filed by plaintiff alleging various disabilities including blindness, alcohol addiction, and drug addiction whose rental application was denied by the defendant housing authority because of plaintiff's criminal record. Plaintiff claimed that the denial violated the FHAA. *Id.* The Seventh Circuit recognized the permissibility of using tenant selection criteria to determine whether an applicant is qualified for a dwelling available as long as these criteria are applied to all applicants. *Id.* It further acknowledged the housing authority's discretion to find that individuals "with a history of convictions for property and assaultive crimes would be a direct threat to other tenants and to deny their applications," and

---

[11] Defendants do not expressly frame their argument as whether the accommodation is "necessary" to afford Evans an "equal opportunity," but the substance of their argument is addressed to these elements and the court will accordingly analyze their argument in terms of these elements.

stated that "consideration of an applicant's criminal record is not forbidden under both the Fair Housing Act and the Rehabilitation Act." *Id.* What distinguishes the instant case from *Talley* is that the plaintiff there did not expressly argue that his criminal history was related to his disabilities. Here, of course, the fact that Evans' criminal history is related to her disability is at the core of plaintiffs' claim. *See also Harris v. Polk County, Iowa*, 103 F.3d 696, 697 (8th Cir. 1996) (court affirmed summary judgment for employer who refused to hire plaintiff because of past criminal record despite allegations that her shoplifting crime was caused by a mental illness; court held that ADA does not require employers to overlook infractions of the law and upheld employer's right to hold disabled employees to same standard of law-abiding conduct as all other employees); *Houck v. City of Prairie Vill.*, 978 F. Supp. 1397, 1403 (D. Kan.) ("A person who commits a criminal act as a result of a disabling condition is not excused from the employment consequences of the criminal act because of the disability."), *aff'd*, 166 F.3d 347 (10th Cir. 1997).

As *Talley* implicitly recognizes, Evans' criminal history is distinct from Evans' disability and is not itself a disability. Many people with the same disability as Evans do not have a criminal record and, conversely, many people with a criminal record do not have her disability (or any other disability).

The court also notes that UDR's criminal history policy is neutral on its face and is applied equally to all applicants, regardless of disability. Defendants rent a number of their apartments to other SEARISE participants, undercutting any notion that they discriminate against individuals with the same disability suffered by Evans on the basis of such disability per se.

The neutrality of UDR's policy, however, does not necessarily insulate it from modifications that are otherwise necessary to accommodate persons with disabilities. For example, in *U.S. Airways*

*Inc. v. Barnett*, 535 U.S. 391 (2002), the Supreme Court held that, in at least some circumstances, an exception to a neutral seniority rule can be a required accommodation. 535 U.S. at 397 ("By definition any special 'accommodation' requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach."). The case involved a seniority policy which would have allowed other more senior employees to displace plaintiff from a less physically demanding job suitable to his disabilities. *Id.*

Here, it is readily apparent that the relationship between the proposed modification of the criminal history policy and Evans' disability is attenuated. Evans is being denied housing because of her criminal record, not because of her disability, and she cannot establish that but for her disability, she would have been entitled to housing at Forest Hills. The modification is, in essence, one step removed from the disability and is not directed at meeting Evans' disability-related needs. It concerns past criminal conduct that itself resulted from the disability, not the ongoing diminution of capacity arising from Evans' disability. The proposed modification is not, say, to establish a substance-free zone in the area of Evans' apartment to help ensure that she is not exposed to illicit drugs and the temptation of abusing them again.

The instant case is therefore distinguishable from those in which accommodations ameliorating ongoing diminution in capacity have been found necessary. Representative of such cases are those in which a landlord is required to modify its policy on pets to permit a hearing-impaired person who relies on a dog for hearing assistance to keep the dog in the apartment. *E.g., Green v. Hous. Auth. of Clackamas Cty.*, 994 F. Supp. 1253, 1255 (D. Or. 1998). Similarly, the instant case is distinguishable from one in which a condominium complex had a duty to

accommodate a resident with multiple sclerosis who requested an indoor parking space notwithstanding a normal policy of first-come, first-served when allocating parking spaces. *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 330, 335 (2d Cir. 1995).

The court does not believe that criminal activity is necessarily a practical impact resulting from the type of disability suffered by Evans. In other words, it cannot be said that to accommodate Evans' criminal history would necessarily be equivalent to accommodating her disability because the criminal history necessarily results from the disability. Many individuals with her same disability do not obtain convictions for assaultive behavior. The fact that there are other persons in the SEARISE program at Forest Hills substantiates that fact because, if they had any such convictions, they would not reside there.

Even when a disability does contribute to a person's participation in criminal conduct, as stipulated here, the disability may well be one of any number of causes. This circumstance contrasts with that of a disabling physical disease in which the disease is wholly responsible for impaired mobility or other diminutions in functionality.

Moreover, wrongful intent is an integral part of most crimes, including assault.[12] In the instant case, the fact that Evans was convicted indicates that the court did not excuse her from criminal responsibility for the assault, notwithstanding her disability. The proposed accommodation would, however, have the effect of excusing her for her conduct due to her disability, at least with respect to housing.

The court finds the instant case to be most comparable to those cases in which the courts have not required modification of landlords' neutral credit and income requirement policies as an

---

[12] The principal exception would, of course, be strict liability offenses.

13

accommodation to prospective tenants claiming that their disabilities rendered them impecunious. In those cases, there is lacking the close causal connection between the alleged disability and the requested accommodation that is also missing here. More specifically, the relationship between the disability and diminished income has attributes comparable to those discussed relating to the relationship between Evans' disability and her criminal record. For example, as with the criminal conduct related to Evans' disability, diminished income does not necessarily result from a disability and may have other causes besides the disability. Moreover, in the credit and income policy cases in question the disability is purportedly impairing the worthwhile activity of income generation and accommodation is nevertheless denied. The case for accommodation would appear to be even weaker when, as here, the disability relates to criminal conduct.

A leading case is *Salute v. Stratford Greens*, 136 F.3d 293 (2d Cir. 1998). In that case, the Second Circuit held that a landlord did not violate the FHAA by denying rental applications from prospective tenants in the Section 8 program, a federal program providing housing subsidies to low-income persons with disabilities. Plaintiffs argued that their disabilities prevented them from earning more money and that the landlord's policy of denying Section 8 applicants should be modified to accommodate their low-income status. The court rejected this contention. In finding the causal connection between the proposed modification and defendants' disabilities lacking, the court stated:

> what stands between these plaintiffs and the apartments at Stratford Greens is a shortage of money, and nothing else. In this respect, impecunious people with disabilities stand on the same footing as everyone else. Thus, the accommodation sought by plaintiffs is not "necessary" to afford handicapped persons "equal opportunity" to use and enjoy a dwelling.

136 F.3d at 302; *see also Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372, at *4 (E.D. Mich. 15 Oct. 2008) (court granted summary judgment in FHAA case to landlord who refused

to make accommodation to credit policy because plaintiff's requested accommodation went more towards plaintiff's economic condition than disability; court collected cases where other courts "have similarly refused to require accommodations aimed at alleviating financial hardships rather than overcoming obstacles particular to disability."); *Bell*, 2008 WL 2783343, at *15 (court granted motion to dismiss FHAA claim where plaintiff did not establish nexus between her disability and the requested accommodation; plaintiff alleged that a disability prevented her from working and sought an apartment despite being below minimum income requirements); *Rosenthal v. Hershman*, No. 4:05CV1024, 2005 WL 3348931, at *3 (E.D. Mo. 7 Dec. 2005) (court granted judgment on pleadings in FHAA case where plaintiff sought accommodation of credit check policy, holding that plaintiff's "bad credit is not the same as his disability, and none of the laws he cites require accommodation of poor credit"); *Geter*, 537 F. Supp.2d at 209 (court granted defendants' motion for judgment on pleadings on FHAA claim where plaintiff failed to establish necessity of a requested accommodation, namely, adjustment of the due date for rental payments under defendants' policy to accommodate the date on which plaintiff received his disability check); *Schanz v. Vill. Apts.*, 998 F. Supp. 784, 792 (E.D. Mich. 1998) (court granted summary judgment against plaintiff who sought as an accommodation modification of income and credit requirements, alleging that he was unable to work as a result of his disability; court held that plaintiff could not "transform his 'financial status' into a 'handicap' in order to secure relief under the FHAA").

The court has considered the authorities upon which plaintiffs rely to support their position that defendants did have a duty to modify their criminal history policy as an accommodation to Evans, but finds them unpersuasive in these circumstances. One of the principal cases they cite is the *Barnett* case discussed above. While *Barnett* held that at least in some circumstances making

an exception to a seniority rule can be a required accommodation, 535 U.S. at 394, it did not explicitly reject the requirement that a plaintiff establish a nexus between the disability and the accommodation. *Bell*, 2008 WL 2783343, at *12.

Plaintiffs also cite to *Giebeler v. M&B Assoc.*, 343 F.3d 1143 (9th Cir. 2003). *Giebeler* involved a plaintiff who had AIDS and could not meet defendants' minimum income policy after his disability prevented him from working. 343 F.3d at 1151. The Ninth Circuit held that defendants had a duty to accommodate plaintiff by flexibly applying their minimum income requirements and found that allowing plaintiff's mother to co-sign with him was a reasonable accommodation. *Id. Giebler*, which is not binding authority on this court, arguably conflicts with the other case law cited regarding landlord's credit and income policies. On the other hand, the fact that the case involves AIDS may alone make it unique given the myriad of circumstances particular to that disease.

Another case upon which plaintiffs rely is *Freeland v. Sisao LLC*, No. CV-07-3741, 2008 WL 906746 (E.D.N.Y. 1 April 2008). There, the plaintiff alleged that defendants failed to reasonably accommodate her disability when they refused to accept her subsidized housing voucher. 2008 WL 906476 at *1. The *Freeland* court denied defendants' motion to dismiss. The court noted that plaintiff was already a tenant in defendants' building at the time she requested the accommodation, and held that, consistent with *Barnett*, plaintiff might be able to demonstrate that acceptance of her subsidized housing voucher was a reasonable accommodation of her disability. *Id.* at *5. Here, of course, Evans was not already a tenant in Forest Hills when she requested the accommodation. To the extent that *Freeland* applies a rule contrary to that reflected in the cases previously cited, the court declines to follow it.

16

Finally, plaintiffs cite to a number of cases involving eviction proceedings against plaintiffs who engaged in mental-health related misconduct while tenants and sought accommodations prior to eviction. (*See, e.g.*, Pls.' Mem. (D.E. 34), pp. 11-13 (collecting cases)). In those cases, the courts viewed accommodations as being necessary and decided whether there existed reasonable accommodations which would allow the tenants to remain in their housing and avoid eviction. Needless to say, the fact that those cases involved evictions of existing tenants presents a host of issues not present in the instant case, which involves a prospective occupant's ability to meet general occupancy requirements.

The court concludes that the causal connection between the modification of UDR's criminal history policy requested by plaintiffs and Evans' disability is not sufficiently strong to make that accommodation necessary to provide her an equal opportunity for housing under the FHAA. Defendants therefore did not, as a matter of law, violate the FHAA by not making this modification. Because the court finds dispositive the issue of whether the requested modification was necessary, it need not resolve the other ground for defendants' motion, namely, that the requested accommodation was not reasonable.[13]

---

[13] In fact, were the court to find the accommodation necessary and then be obligated to consider the reasonableness of the proposed accommodation, it would likely conclude that issues of fact preclude a determination of reasonableness on this motion for summary judgment. There appear to be numerous issues of fact relating to the reasonableness element, including but not limited to whether Evans' tenancy would present a danger; whether the supervision provided by SEARISE could minimize any danger; whether other tenants would be affected or concerned by any waiver in the policy; whether it would be feasible for defendants to train its employees in assessing whether or not to waive the criminal history policy in a given case; and whether a waiver would affect the property value of the complex. *See, e.g., Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002) ("Generally, the question of whether a proposed accommodation is reasonable is a question of fact.") (citing *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527 (11th Cir.1997)); *Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1328, 1338 (S.D.Fla. 2007) (issues of fact precluded summary judgment on issue of whether accommodation was reasonable); *Jama Invs., L.L.C. v. Inc. Cty. of Los Alamos*, No. CIV 04-1173, 2006 WL 1228771, at* 13 (D.N.M. 16 Feb. 2006) (court found that issues of fact on whether accommodation was reasonable precluded an award of summary judgment to either party).

## CONCLUSION

For the foregoing reasons, there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(c). It is therefore RECOMMENDED that defendants' motion for summary judgment be ALLOWED, and judgment be entered DISMISSING this case with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This 2nd day of February, 2009.

James E. Gates
United States Magistrate Judge